## Talman *vs.* The Rochester City Bank.

M. being indebted to the Rochester City Bank, by arrangement with the bank and for the purpose of procuring the means of payment, assigned to the Am. L. I. and Trust Co. the first six installments upon a bond and mortgage held by him; the bank guarantying to the Trust Co., by an instrument under its corporate seal and the hand of its cashier, the final collection of the installments. M. then received the money from the Trust Co., and applied it to the payment of his debt to the bank. *Held,* that the guaranty was valid, and binding upon the bank.

A bank may assign or convey any property held by it, and may enter into the common covenants of guaranty or warranty, on making such assignment or conveyance.

So, when it is agreed that the proceeds of a bond and mortgage shall belong to a bank, the securities are so far the property of the bank that the case is substantially within the rule, and the bank has the capacity to guaranty the payment thereof, to a party advancing money upon them; although such securities have not been assigned to the bank.

THIS was an appeal by the defendant, from a judgment entered at a special term, overruling a demurrer to the complaint. The complaint stated that on the 1st of August, 1838, William W. Mumford being the owner of a bond and mortgage executed by Elihu Ingersoll for $19,000, and being indebted to the defendant in a large sum of money, and the defendant being desirous of obtaining payment thereof, he the said William W. Mumford, *in order to procure the means for the payment of the same,* sold and assigned to the American Life Insurance and Trust Company the six first installments to fall due upon the bond and mortgage, amounting to $14,250. It was a condition of the purchase by the American Life Insurance and Trust Co. that the defendant (the Rochester City Bank) should guaranty to the said Trust Company, " the final collection of the said first six installments, and the interest which should accrue thereon ;" and the defendant (the Rochester City Bank) did make and execute under its corporate seal and the hand of its cashier, and deliver to the said Trust Company, at the same time and place that the said Mumford delivered to said company the said bond and mortgage and assignment, a written guaranty dated June 19, 1838. That guaranty described the bond and mortgage as belonging to Mumford, and recited that Mumford, being indebted to the Rochester City Bank, had proposed to sell and dispose of said bond and mortgage for the purpose of applying the proceeds of the six first installments secured thereby, upon his said indebtedness, upon receiving from the Rochester City Bank their guaranty of the said installments and interest to accrue thereon, to enable him to effect the said sale ; and that Mumford, in pursuance of the said arrangement, had executed an assignment of said bond and mortgage to the American Life Insurance and Trust Company, with a covenant guarantying the collection of principal and interest, and then proceeded as follows : " Therefore, in consideration of the premises, and of one dollar to them in hand paid by the said ' The American Life Insurance and Trust Company,' the said the Rochester City Bank do hereby assure and guaranty to the said ' The American Life Insurance and Trust Company' the final collection of the said

Talman *v.* The Rochester City Bank.

six first installments of principal, to become due on the said bond and mortgage, with the interest which shall accrue thereon. And in case of any deficiency in collecting the said principal and interest moneys here assured, after due measures taken to enforce the collection thereof, upon the said bond and mortgage, then the said the Rochester City Bank will pay and make good to the said 'The American Life Insurance and Trust Company' the amount of such deficiency." * * * " In witness whereof, the cashier of the said Rochester City Bank (thereunto duly authorized by a resolution of the board of directors of said corporation) has hereunto subscribed his name, and affixed their corporate seal, this 19th June, 1838." That Mumford applied the proceeds of said sale of the six first installments, to the payment of his indebtedness to the defendant, " and his negotiating the sale was with the knowledge and assent of the defendant, and for the mutual benefit of the defendant in this action, and of the said Mumford." That Ingersoll, the mortgagor, in December, 1837, conveyed the equity of redemption to Samuel Gillis, who took possession of the mortgaged premises, and continued in possession until the sale thereof under the decree of foreclosure. In April, 1839, Mumford, in his own name and that of the trust company as complainants, (but without authority from the company,) filed a bill before the vice chancellor of the 8th circuit, against Samuel Gillis, John M. Hughes, Homer Collins, Ira B. Cary and John Dows as defendants, for the foreclosure of the mortgage and sale of the mortgaged premises, and to stay waste. That the company adopted the suit, and on the 14th November, 1839, a final decree was made establishing the sum due, and to become due, and remaining unpaid on said bond and mortgage, and for the foreclosure and sale of the mortgaged premises, to satisfy the sum due and to become due, and costs. On the 11th of January, 1840, the mortgaged premises were sold by a master, in pursuance of the decree, and bid in by George H. Mumford (the complainant's solicitor) for the benefit of the Trust Company, at $1200. George H. Mumford, on the 8th of August, 1851, conveyed to the plaintiff in this suit. On or about the 31st day of May, 1851, the plaintiff offered to con-

vey the mortgaged premises to the defendant, provided the defendant would pay the amount of the said first six installments, being $14,250 and interest; but the defendant refused, and rejected the proposition. On the 24th November, 1851, the plaintiff sold the premises for $5150, being the fair and reasonable value thereof. Ingersoll, (the mortgagor,) before any sum became due on the mortgage, removed from the state of New-York to Michigan, where he resided when the bill of foreclosure was filed, and afterwards, until July, 1839, when he died at Michigan, insolvent. That he was insolvent when he removed from New-York, and thence forward until he died. That there is now due and unpaid upon the bond and mortgage the said six first installments, amounting to $14,250 with interest thereon from January 1, 1838, deducting only the sum of $5150, proceeds of said sale; no part of the $14,250 or of the interest thereon having been otherwise paid. That on the 6th of July, 1842, the American Life Insurance and Trust Company, by an assignment under its corporate seal, assigned and transferred said bond and mortgage and guaranty to the plaintiff, Anthony Barclay and Patrick Macauley, in trust, for the payment of certain debts. That Barclay refused to accept the trust, and Macauley died in June, 1849. That at the several days and times before mentioned the defendant was and yet is a banking corporation, created, organized, acting and doing business under the laws of this state, having its place of business at the city of Rochester. That prior to the 1st of Jan. 1838, and up to and after the 6th of July, 1842, the said "The American Life Insurance and Trust Company" was a corporation duly created and empowered by and organized under the laws of the state of Maryland, and as such corporation, duly authorized and empowered amongst other things to contract for and receive said bond and mortgage on such consideration as aforesaid. The plaintiff demanded judgment for $22,010.70, and interest from January 1st, 1852. The defendant demurred, and assigned as causes: That the complaint did not state facts sufficient to constitute a cause of action. That it was not alleged that the execution of the guaranty was authorized by the board of directors. That it

was not alleged that the cashier had authority from the directors to affix the corporate seal to the guaranty. That it was not alleged that the defendant received any consideration for the guaranty. That due diligence had not been used to collect the money out of the mortgaged premises, or from the mortgagor. That the American Life Insurance and Trust Company was not shown to have been authorized to purchase the bond and mortgage, or accept the guaranty, or to assign them for the purposes mentioned.

*H. R. Selden,* for the appellant. I. It does not appear from the complaint that the bank received any consideration for the guaranty. (1.) The bank had not, in consideration of the guaranty, any legal interest in, or control over, the proceeds of the sale of the mortgage by Mumford. It was Mumford and not the bank that sold, and he alone was entitled to receive the proceeds of the sale. There is nothing stated in the case which could have justified the Trust Company in paying the proceeds of the six installments to the bank, against the wishes of Mumford. All that appears on the subject is that Mumford " proposed to sell the mortgage for the purpose of applying the proceeds of six installments upon his indebtedness." And that he did sell, in order to procure the means for the payment of such indebtedness, to the bank. This, with the guaranty by the bank, " to enable him to effect the sale," no doubt created a moral obligation upon the part of Mumford to apply the proceeds as he had proposed. If there was an agreement on the part of Mumford so to apply the proceeds, such agreement should have been set forth. What is set forth is only evidence, tending (though by no means conclusively) to sustain such an allegation, if it had been made. That Mumford alone was entitled to the proceeds is obvious, not only from the fact that he made the sale, and that the guaranty was made " to enable him to effect the sale," but also from the fact that he received the proceeds, whatever they were. That he applied them upon his indebtedness, if he did so, was the bank's good fortune ; had he done otherwise, the bank would have been without legal means of redress. The statement

that "his" (Mumford's) "negotiating of the sale was for the mutual benefit" of the bank and Mumford, does not add any strength to the complaint. It is too vague and indefinite. If the bank had any interest in the mortgage, or any right to the proceeds, or any part of them, it was easy to say so, and to show what interest or what right. As it stands, it amounts to no more than an inference from the facts before stated. It adds no fact to those other facts. (*Carpenter* v. *Alexander,* 9 *John. Rep.* 291. *Van Ness* v. *Hamilton,* 19 *Id.* 372.) It is always to be inferred that a party has stated his case as favorably for himself as possible. (*Slocum* v. *Clark,* 2 *Hill,* 471 ; 1 *Id.* 71. *Fuller* v. *Hampton,* 5 *Conn. Rep.* 422, *per Hosmer, Ch. J.* 1 *Chitty on Plead.* 237, *Springfield ed. of* 1840.) (2.) There is no allegation that any consideration was paid directly to the bank for its guaranty. The recital in the guaranty of a consideration of one dollar paid, would be good evidence to sustain an allegation of such consideration paid; but without such an allegation in the complaint, it amounts to nothing. Material facts are not well stated by way of recital. (1 *Chitty on Plead.* 237.) We do not claim, under this point, that the consideration passing from the Trust Company to Mumford (supposing the bank to have received no consideration) would be insufficient to sustain the guaranty if made by an individual. All that we claim in this respect is, that it places the bank in the position of a mere accommodation guarantor for the benefit of Mumford ; and that all that is said about Mumford's indebtedness to the bank, and his obtaining means to pay the debt, gives the bank no legal rights, and imposes upon it no obligations whatever, differing in any respect from those which would have existed upon its guaranty of a mortgage for an entire stranger.

II. The defendant had no authority, under its charter, to become the guarantor of the mortgage, under the circumstances detailed in the complaint. (1.) We assume, as shown under the first point, that the defendant was a mere accommodation guarantor, without consideration, except such as passed from the Trust Company to Mumford, and with that state of facts the guaranty can have no validity. The powers of this corporation are defined

Talman *v.* The Rochester City Bank.

in its charter, (*Sess. Laws* 1836, *ch.* 363, § 3, *p.* 534,) and it will not probably be contended that it has authority to become the accommodation guarantor of every body's doubtful paper. (2.) If the recital in the guaranty, of one dollar paid the bank as a consideration, is to be regarded as the allegation of a fact admitted by the demurrer, it does not make the guaranty valid. The defendant is a banking, not an insurance company, and has no power to insure the collection of bad debts, for any premium, great or small. It is not for that purpose that the stockholders place their money under the control of its officers. (3.) Conceding (though we do not so understand the case) that there was an agreement that the proceeds of the mortgage should be applied upon the indebtedness of Mumford to the bank, still the bank had no power to bind itself by the guaranty. This corporation had power "to carry on the business of banking *by* discounting bills, notes, and other evidences of debt, by receiving deposits, by buying and selling gold and silver bullion, foreign coins and bills of exchange; by issuing bills, notes, and other evidences of debt; and by exercising such other incidental powers as shall be necessary to carry on such business." (*Laws of* 1836, *p.* 534, § 3.) Beyond the powers so given, and the general powers possessed by every corporation, which do not reach this case, (1 *R. S.* 600, § 1,) it neither had nor could exercise any powers whatever. (*Id.* § 3. *Laws* 1836, *p.* 545, § 33. 15 *John.* 358. 4 *Denio,* 480. 3 *Comst.* 370, 371, *per Cady, J.* 13 *Peters,* 387, *per Taney, Ch. J. Bank of Kentucky* v. *Schuylkill Bank,* 1 *Parsons' Select Equity Cases, Penn.* 181. *Angel & Ames on Corp. p.* 218, 234, 243, *of ed. of* 1846.) Authority to execute the guaranty in suit cannot be found among those powers, either principal or incidental. We may concede, that if the bond and mortgage in question had been assigned in good faith by Mumford to the bank as security for his debt, the bank might (with the consent of Mumford) have assigned them to a purchaser, and entered into the *guaranty* in question. The distinction is manifest between a guaranty of its own chose in action and that of a stranger. The one, the bank will be presumed to know all about; of the other, to know nothing.

Restricted to the guaranty of its own securities, the amount is necessarily limited; extending it to the securities of others, even of its customers only, the amount of obligations it may assume is wholly unlimited. Neither case would fall within the specified powers of the bank. The former might properly be regarded as a necessary incidental power, but the latter certainly could not. It is plainly to be implied from the act of May 26, 1841, (*Sess. Laws* 1841, *ch.* 292,) that the legislature did not regard banks as having power to guaranty the choses in action of third persons. If they have such power, of what possible use is the limitation in section 2 of that act, of the extent to which they may guarantee or indorse their own discounted paper. And the opinion of Justice Cady, referred to above, limits the power of the American Life Insurance and Trust Company, in relation to guaranties, by the rule we have stated, confining it to bills and notes " previously discounted or purchased, and then held by the company or its agents." It may be that the exercise of such a power might enable the bank occasionally to obtain payment of a debt which would otherwise be lost; but that argument makes nothing in favor of the power. The same might be said of many other powers which clearly cannot be exercised. It might secure a bad debt by becoming a partner in business with its debtor, with an agreement that the profits should apply in payment of the debt; or by becoming bail for the discharge by its debtor of the duties of a public office, on condition that the salary or fees, in whole or in part, should be applied on the debt; or by a guaranty of the payment by the debtor of the cost of a stock of goods purchased by him, on condition that their debt should be paid out of the proceeds of the goods; but an intelligent stockholder would tremble to see such power given to, or used by, a banking corporation in which his capital might be invested. The hazard would prove, as in the case before the court, to greatly overbalance the chances of gain. It will be perceived that this power, if possessed at all, is not limited to the guaranty of paper to obtain security for doubtful debts. If it can be done to secure one debt, it can to secure all; and the bank may assume such collateral engagements with every dis-

count it makes. Neither is there any limit to the *extent* of liability which may be assumed to obtain security for any single debt. A thousand dollars or a hundred thousand may be guarantied to obtain security for one hundred, and that, where the one hundred was already well secured. In this case there is no pretence that the debt of Mumford was not already well secured. Nor is there any statement of the amount of the debt secured, or of the sum to be received by the bank, as a consideration for the guaranty of $14,000. Whether Mumford's debt was ten thousand dollars, or ten hundred, or only one hundred, does not appear; nor has the plaintiff ventured to state what the Trust Company was to pay for the mortgage, whether ten dollars or ten thousand, or whether money or worthless paper, or whether any thing was in fact paid for it. Wherever these corporations have been ruined, it is almost an invariable rule, that their ruin has been produced by a departure from their legitimate duties ; and the public interest, as well as the interest of their stockholders, requires that courts should hold a rigid rule over them in this respect.

III. The bank is not estopped by the act of its officers from denying its power to execute the guaranty. (8 *Ohio Rep.* 285, 289. 5 *Denio*, 56. 7 *Eng. Com. Law Rep.* 580. 8 *Gill & John.* 249. *Bank of Augusta* v. *Earle*, 13 *Peters*, 587, 88, *per Taney, Ch. J.*) Persons dealing with a corporation are presumed to know the extent of its powers, and of the power of its officers. (3 *Cowen*, 662. 3 *McLean*, 102. *Salem Bank* v. *Gloucester Bank*, 17 *Mass. Rep.* 28, 29. *Angel & Ames on Corp.* § 299. 1 *Hoff. Ch. Rep.* 166.)

IV. The American Life Insurance and Trust Company, so far as the complaint shows, never paid or gave any consideration whatever for the bond and mortgage or the guaranty. There is no allegation in the complaint on the subject of the Trust Company having paid any thing, or done any thing, or promised any thing, as the consideration of the bond and mortgage, or the execution of the guaranty. The only allusion to the subject of a consideration is the recital in the guaranty, that it was executed " in consideration of the premises and of one dollar in hand

paid." "The premises" thus referred to as a consideration, con-
sisted of Mumford's having "proposed" to sell the bond and
mortgage and apply the proceeds of six installments upon his
debt to the bank, and of his having executed an assignment of
them, with a guaranty of collection, to the Trust Company;
not that the Trust Company had paid or agreed to pay any
thing for them, or that he had paid or agreed to pay the bank
any thing. As to "the one dollar in hand paid," the substance
of the complaint, taken as a whole, is this, that in consideration
that Mumford had proposed to sell the bond and mortgage and
apply the proceeds of six installments on his debt to the bank,
and of his having executed an assignment " which purported on
its face" to assign the whole bond and mortgage, and de-
livered it, with the bond and mortgage, to the Trust Company,
the bank executed the instrument called a guaranty, reciting
such proposal and assignment by Mumford, and that one dollar
had been paid the bank by the Trust Company, but without any
thing in fact having been paid by the Trust Company to either
Mumford or the bank. The allegation that Mumford applied
the proceeds of the sale of the six installments to the payment
of his indebtedness, does not avoid the difficulty. So far as the
complaint shows, those proceeds were nothing. We have a
right to assume that they were so, and then the allegation
amounts to this ; the proceeds of the sale being nothing, Mum-
ford applied nothing on his indebtedness. If the proceeds were
any thing, it was the duty of the plaintiff so to state, and to
show what they were. (2 *Hill*, 471.) The omission is sub-
stantial and material. Perhaps, when shown, the whole trans-
action would appear clearly illegal, and this may be the reason
for the omission.

V. There can be no pretense that the complaint shows any
consideration for the assignment of the mortgage and the execu-
tion of the guaranty, beyond the one dollar, recited in the guar-
anty as paid to the bank. Even considering that as well
pleaded, the complaint still fails to show a cause of action. A
guaranty on the sale of a security, though in terms binding the
guarantor for the payment of the whole amount of the security,

in reality binds him to the extent only of the consideration paid by the purchaser. In this case, the bank would be bound to the amount of one dollar and interest. For this, the purchaser has collected on the security $5150, as the complaint shows. (*Rapelye* v. *Anderson,* 4 *Hill,* 472. *Mazuzan* v. *Mead,* 21 *Wend.* 285.)

VI. Due measures have not been taken to enforce the collection of the money upon the bond and mortgage, as required by the terms of the guaranty. (*Moakley* v. *Riggs,* 19 *John.* 69. *Thomas* v. *Woods,* 4 *Cowen,* 173. *Taylor* v. *Bullen,* 6 *Id.* 624. *Eddy* `v. *Stanton,* 21 *Wend.* 255. *Loveland* v. *Shepard,* 2 *Hill,* 139. *Burt* v. *Horner,* 5 *Barb.* 501. *Van Derveer* v. *Wright,* 6 *Id.* 547.)

*D. Lord,* for the plaintiff. The demurrer is limited to the points of objection stated. (*Code,* § 145.) A demurrer only brings into judgment the sufficiency of the allegations of the complaint as a pleading, and has no reference to the sufficiency of the proofs.

I. As to the execution of the covenant. (1.) The averment that the defendants made the guaranty, is sufficient in pleading: it may be supported by proof of execution, by the directors as a body, or by a committee, or by a cashier, or in any other mode. (*Lovett* v. *Steam Saw-mill Asso.* 6 *Paige,* 60. *Johnson* v. *Bush,* 3 *Barb. Ch. R.* 238. *Hoyt* v. *Thompson,* 1 *Seld.* 335.) (2.) It was not necessary, after alleging that the bank made, sealed and delivered the guaranty, to allege authority in the cashier; it does not derogate from the allegation of the execution of the covenant, that it is stated that it was subscribed by the cashier. `

II. As to the consideration. (1.) It being alleged that the covenant was under the seal of the corporation, no further allegation of consideration was necessary. (*Bush* v. *Stevens,* 24 *Wend.* 256. *Childs* v. *Barnum,* 11 *Barb.* 14.) (2.) So also the nominal consideration of one dollar, recited in the covenant, and which the defendants are estopped to deny, is sufficient to uphold the contract. (11 *Barb.* 14. *Lawrence* v. *McCalmont,*

2 *How. U. S. R.* 452, 3.    *Oakley* v. *Boorman,* 21 *Wend.* 588. 1 *Phil. Ev.* 549.)    (3.)  But full consideration is alleged.  W. W. Mumford, being indebted to this bank, and the bank desirous of obtaining payment, Mumford assigned six installments of the bond, in order to procure the means of such payment.    It was a condition of this purchase, that the bank should guaranty the installments ; Mumford applied the proceeds thereof to the payment of his indebtedness to the bank ; and the negotiating of this sale was with the assent of the bank and for the mutual benefit of the bank and Mumford.    This shows a full consideration of detriment to the covenantees, (Am. L. Ins. and T. Co.,) namely, a parting with their funds, to the defendants' debtor, acting for their benefit and with their assent.    (4.)  This also shows a benefit received by the defendants, who by means of Mumford's negotiation, with their assent, for their benefit and on the faith of this guaranty, obtained the proceeds of the sale applied on their debt against Mumford.

III.  As to the power of the bank.    (1.)  The object of the negotiation and guaranty was to procure money to be applied in payment of a debt to the bank, out of their debtor's property. This is competent for any corporation to do, which is authorized to have debtors or to take their property in payment.    (2.)  It was the same as a transfer of this property to the bank, and a sale of it with guaranty.    The bank had an interest in the bond and mortgage. by express contract.    (3.)  If this guaranty was without authority, it being the basis of the negotiation on which they received the money on account of an antecedent debt, the money could be recovered back ; but this will not be asserted by the bank.

IV.  As to the measures for collection.    (1.)  When the first installment fell due, a bill to foreclose the mortgage and stay waste was filed, prior to 20th April, 1839 ; on the 14th November, of the same year, a decree for the sale was made ; on the 11th January, 1840, the property mortgaged was sold by a master under the decree for $1200.    These were due and diligent measures for collecting the money on the mortgage.  (*Backus* v. *Shipherd,* 11 *Wend.* 635.)    (2.)  Before any money fell due

the obligor of the bond left the state, was insolvent and destitute of property, and died in July, 1839, while the foreclosure was going on. There was no laches, under these facts, in not suing the bond. (3.) The decree and sale being equivalent to judgment and execution, the plaintiff is not bound to negative any allegation that the money could have been made out of any subsequent proceedings. (11 *Wend.* 635.)

V. As to the authority of the Am. Life Ins. and Trust Co. (1.) It is distinctly alleged that they were a corporation authorized to purchase the six installments: it is a foreign law, properly alleged as a fact. (2.) Every corporation, by common right, has power to assign its property for payment of its debts. (*De Ruyter* v. *St. Peter's Church,* 3 *Comst.* 238; *S. C.,* 3 *Barb. Ch. R.* 124.)

*By the Court,* MITCHELL, P. J. The defendants' points state that they may concede that if the bond and mortgage mentioned in this case had been assigned in good faith, by Mumford, to the Rochester City Bank, as security for the debt which he owed to the bank, the bank might (with the consent of Mumford) have assigned the bond and mortgage to another and guarantied the payment. But that a distinction is manifest between the right of the bank to guaranty choses in action, belonging to it, and its right to guaranty those belonging to another.

The concession is right: and a bank may certainly assign or convey any property held by it, and may enter into the common covenants of guaranty or warranty, on making such assignment or conveyance. This right is a matter of substance and not of form. As a formal contrivance, complying in all outward respects with the requirements of the rule, would be a nullity if it was in fact a mere contrivance, and the substance of the transaction were contrary to the rule, so if the case before the court is in substance within the rule, and only needs a formality to bring it in all respects within it, the omission of the form should be disregarded and the substance alone looked to. For it is not a question whether the bank has used the requisite forms or not, but whether it had any power or capacity to do the thing which

it has done, in any possible form; whether the bank had any power, function or franchise to guaranty, in such a case; not whether it had used all the requisite forms which would clearly show that it had such right. This is not like the case, where that which partakes of the character of form is made necessary by statute. There the seeming form becomes essential, and matter of substance, by the effect of the statute; as when a bank is forbidden to issue circulating notes, unless payable on demand, or at its place of business. If the bank has the power or capacity to give its guaranty, under the circumstances of this case, there is no statute against this form of doing it.

The counsel for the plaintiff accordingly insists that the transaction in question was in effect, as well as in form, a guaranty by the bank, of securities in which it had an interest. This requires an examination of the arrangements made between the parties, as shown by the complaint.

On the 1st of August, 1838, Mumford was indebted to the bank in a large sum of money, and the bank was desirous of obtaining payment. Mumford, in order to procure the means of payment—and it is to be inferred, in compliance with this desire—assigned to the American Life Insurance and Trust Company the first six installments (amounting to $14,250) of a bond and mortgage which he held, from one Ingersoll. It was made a condition of the purchase that the bank should guaranty the final collection of these installments and of the interest to become due thereon, and the bank did accordingly execute to the Trust Company its guaranty, which was delivered to the Trust Company at the same time and place that Mumford assigned to the company the bond and mortgage. Mumford received the consideration money for the assignment and guaranty, and applied the proceeds to the payment of his indebtedness to the bank. His negotiation of the note (as is admitted by the pleadings) was with the knowledge and assent of the bank, and for the mutual benefit of himself and of the bank.

The guaranty executed by the bank recites that Mumford, being indebted to the bank, had *proposed* (as is to be inferred, to the bank) to sell the bond and mortgage *for the purpose of*

Talman *v.* The Rochester City Bank.

*applying the proceeds* of the first six installments upon the indebtedness to the bank, *on receiving from the bank their guaranty* of the said installments, and interest thereon, *to enable him to effect the sale,* and that Mumford in pursuance of *that agreement* had executed an assignment of the bond and mortgage to the Trust Company, with a covenant guarantying the collection of the principal and interest ; and then, in consideration of the premises and of one dollar paid by the Trust Company, the bank guaranties to the company the final collection of the said installments, and of the interest thereon ; and reserves to itself the right, upon any default in payment of principal or interest, to pay the amount then unpaid to the company, and to *have the bond and mortgage assigned to the bank,* if the bank shall so elect.

The mortgaged premises were sold, on foreclosure, and on a final sale, on the 24th of November, 1851, only realized $5150, which was their fair value on the last mentioned day. Ingersoll was insolvent and removed from the state, and nothing could be collected from him. The bank is called upon to fulfill its guaranty, and insists that it had no legal capacity to make such a guaranty, and that it is not therefore liable on it. From this statement it is plain that Mumford held the bond and mortgage and arranged with the bank to convert it into money, for the benefit of the bank, and to apply the money to be received to pay his debt to the bank, and that in pursuance of this arrangement, communicated to the Trust Company, he assigned the bond and mortgage to the company, and the bank at the same time guarantied to the company the payment of the bond and mortgage or of the six first installments on it, and that Mumford received the money from the Trust Company and *applied* the proceeds to the payment of his debt to the bank. If Mumford had asigned the bond and mortgage to the bank and the bank had assigned them to the company, and guarantied the payment as it did, it is conceded that the bank would have been liable. The only difference is that the one transfer from Mumford to the bank, that would have been necessary in that case, was omitted, and Mumford, to simplify the transaction, assigned directly to

the company. This was a mere matter of form in conveyancing, and neither the one form nor the other can be considered as in any degree an attempt to enlarge the franchises of the bank. The measure of a franchise is never determined by immaterial forms. The question always is what power or capacity has been given; not whether the power is exercised in a particular form. In substance the bank had an interest in the bond and mortgage. The arrangement made between it and Mumford that he should assign that bond and mortgage for their benefit, or assign them and apply the proceeds to his debt to them, gave them such an interest in this bond and mortgage that to some extent the bond and mortgage were the property of the bank. They were agreed to be theirs when it was agreed that the proceeds should be theirs; and when this agreement was carried out, and became an *executed contract*, it made the bond and mortgage as much to have been theirs during the process of completing the arrangement, as if there had been an express contract, on a sufficient consideration, to assign the bond and mortgage directly to the bank, that the bank might assign to the company. This was the only question much argued in the case: most of the others were waived. It was contended that in some respects the complaint set forth not facts, but the evidence of facts, only. If the facts stated are such that if they were proved as stated, the plaintiff must recover, by operation of law; then the plaintiff has set forth a sufficient cause of action. So when the plaintiff alleges the execution of the guaranty, by the bank, under its seal, and the guaranty recites the consideration on which it was executed, and that is a lawful and sufficient consideration, that is *prima facie* enough. A statement of certain evidence from which the *law* draws a conclusion of fact, is in effect a statement of that fact; but a statement of evidence from which the law would not draw a conclusion of fact, but which would be left to a jury to find one way or the other, although it be so clear that a jury ought to find only one way, may not be sufficient, in pleading. So it might be that it would not in pleading be a sufficient allegation of unseaworthiness of a ship to allege that she set sail, and on the same day, without encountering any

storm or casualty, foundered at sea; although a jury would be bound, on such evidence, to find that she was unseaworthy. In pleading it might be insufficient, because by possibility the ship was still seaworthy when she left her port. None of the objections to what is called evidence of facts seem to be as clear as the case supposed. Yet even in such a case, it may be doubtful whether the proper remedy is by demurrer, when the party has a more appropriate remedy by moving to make the pleading more definite and certain.

The judgment appealed from should be affirmed, with costs.

[NEW-YORK GENERAL TERM, June 1, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]