[No. 5257.]

## F. F. LOW and JOHN B. FRISBIE v. THE CALIFORNIA PACIFIC RAILROAD COMPANY and THE CENTRAL PACIFIC RAILROAD COMPANY.

Power of a Corporation. — A railroad corporation has power, upon a sufficient consideration, to guarantee the payment of the bonds of another railroad corporation.

Appeal from the District Court, Nineteenth Judicial District, City and County of San Francisco.

The California Pacific Railroad Company was a corporation organized under the laws of this State, in 1869, to construct and operate a railroad between Vallejo, Sacramento, and Marysville, which road was completed. The Central Pacific Railroad Company is likewise a corporation organized under the laws of this State, in the year 1864, to construct and operate a railroad between Sacramento and the eastern boundary of this State. This railroad was likewise completed.

The plaintiffs, as trustees, were the owners of bonds of the California Pacific Railroad Company amounting to $3,500,000, and which were past due. Proceedings in bankruptcy in the District Court of the United States had been instituted for the collection of the bonds.

On the 9th day of December, 1875, the plaintiffs, as trustees aforesaid, entered into an agreement with the California Pacific Railroad Company, whereby they agreed to relinquish the aforesaid bonds, amounting to $3,500,000, and accept in lieu thereof $2,000,000 of the bonds of the California Pacific Railroad Company, payable in thirty years from the first day of July, 1875, with interest at the rate of six per cent. per annum, which said bonds should be secured by a trust mortgage upon said railroad and its properties and franchises, the said California Pacific Railroad Company agreeing to cause the payment of said bonds to be guaranteed by the Central Pacific Railroad Company, and to provide a legal and valid consideration to support said guaranty.

The California Pacific Railroad Company proffers to plaintiffs its bonds executed and secured according to agreement, and of the required amount, and upon each bond, and over the signature and seal of the Central Pacific Railroad Company, duly affixed, was written the following guaranty:

"Whereas, the California Pacific Railroad Company, maker of the foregoing bond, has leased its railroad, and branches thereof, for the term of twenty-nine years, to the Central Pacific Railroad Company; now, therefore, in consideration of said lease and of other valuable considerations thereunto moving, the said Central Pacific Railroad Company hereby guarantees the payment of the foregoing bond, both principal and interest, to

the holder thereof, according to the terms of said bond and the coupons thereto attached."

The terms of the lease referred to in said guaranty, and which was relied upon as a legal and valid consideration for the support of said guaranty, were as follows:

1. The California Pacific Railroad Company leases its road, fixtures, rolling stock, and appurtenances, to the Central Pacific Railroad Company, for the term of twenty-nine years, commencing on the 1st day of July, 1876.

2. In consideration of said lease, the Central Pacific Railroad Company guarantees the payment of the bonds hereinbefore mentioned, both principal and interest at maturity.

3. To pay to the California Pacific Railroad Company the sum of $550,000 as annual rent, to be paid semi-annually, in installments of $275,000, on the 15th of June and the 15th of December in each year, the first payment to be made on the 15th of December, 1876.

4. To keep the road and rolling stock of the said California Pacific Railroad Company in repair, and return the same at the expiration of said lease in as good condition as the same now are, except in cases of extraordinary damages resulting from floods, tempests, etc., which latter named damages are to be repaired at the expense of the said California Pacific Railroad Company.

5. To pay, during the term of said lease, all the taxes that may be levied upon the property of the said California Pacific Railroad Company, both State, county, and municipal.

6. To pay all legal expenses and damages that may be sustained by third parties in consequence of the operation of said road by said Central Pacific Railroad Company.

7. The said Central Pacific Railroad Company to have the option to pay the aforesaid sum of $550,000 in money or in interest coupons attached to the bonds, or any thereof, of the said California Pacific Railroad Company.

8. If the net earnings of the road shall at any time exceed the sum of $550,000, one-fourth of such excess shall be paid to the Central Pacific Railroad Company, and three-fourths thereof to the California Pacific Railroad Company. By net earnings is

meant such sum as shall be left after the payment of all expenditures, liabilities, and disbursements of every kind and description whatever, including repairs, taxes, interest on bonds, and the principal thereof.

9. The three-fourths of such excess over $550,000 to be converted by the said California Pacific Railroad Company into a sinking fund to meet the extraordinary repairs caused by floods, etc., hereinbefore mentioned, and also to meet and pay the principal of the bonds of said Company at maturity.

10. The terms of the lease may be altered at the expiration of each period of five years, upon demand or request of either party thereto. If the parties themselves cannot agree upon the alteration to be made therein, the subject-matter shall be referred to arbitrators, each party choosing one, and those two selecting, if necessary, a third.

The plaintiffs declined to receive said bonds, on the following grounds:

1. Because the Central Pacific Railroad Company was without power or authority to guarantee the payment of said indebtedness of the California Pacific Railroad Company.

2. Because neither the California Pacific Railroad Company had power to make a lease of its road, nor had the Central Pacific Railroad Company power to receive said lease; and that hence said lease is void, and the said guaranty is without a legal or valid consideration to support it.

The parties agreed upon a case containing the facts upon which the controversy depended, and submitted the same to the Court for its judgment thereon.

The question submitted to the Court for decision was: Is the guaranty of the Central Pacific Railroad Company upon said bonds valid and binding upon it?

The Court held the contract valid and binding. The plaintiffs appealed.

*George Cadwalader,* for the Appellants, cited 2 Kent's Com. 298, and *Vandall* v. *South San Francisco Dock Company,* 40 Cal. 83.

*Delos Lake,* also for the Appellants, cited *Madison &c.*

*Plank Road Company* v. *Watertown &c. Plank Road Company*, 7 Wis. 59; *Mount* v. *The Shrewsbury &c. Railroad Company*, 13 Beav. 1; *State Bank* v. *United States Pottery Co.* 34 Vt. 144; and *Smead* v. *Indianapolis R. R. Co.* 11 Ind. 104.

*S. W. Sanderson*, for the Respondents.

The power to make and take a lease of a railroad is expressly given by the statute under which the respondents were incorporated. The language of the statute is as follows: " Any railroad corporation organized under the act to which this is amendatory, shall have the right to lease the whole or any portion of their road to any other corporation organized under this act, or to grant to any such corporation the right to use in common any portion of their road." (1 Hittell, art. 838.)

In exercising the power to lease, respondents are vested with all the powers and privileges which private individuals and natural persons enjoy. The third section of the statute under which the respondents were organized, among other things, declares that a corporation organized under it " * * * shall be a body politic and corporate, * * * and shall be capable in law to make *all contracts* * * * necessary for the construction, completion, and maintenance of such railroad, * * and generally to possess all the powers and privileges, for the purpose of carrying on the business of the corporation, *that private individuals and natural persons now enjoy.*" (1 Hittell, art. 828.) Hence, if a natural person can take a lease, and, in part consideration thereof, guarantee a debt of the lessor, a corporation having the power to take a lease may also do it. (*The Chicago &c. R. R. Co.* v. *Howard et al.* 7 Wall. 1; *Smead* v. *Indianapolis &c. R. R. Co.* 11 Ind. 104, 111; *Talman* v. *Rochester City Bank*, 18 Barb. 123; Angell & Ames on Corporations, sec. 271.)

" A corporation, in order to attain its legitimate objects, may deal precisely as an individual who seeks to accomplish the same ends." (Green's Brice's *Ultra Vires*, 121, note; *Stewart* v. *Erie &c. Transportation Co.* 17 Minn. 372.)

The power to make or take a lease being expressly given, the power to agree upon the terms of the lease, whatever they may be, is included or implied.    There is a perfect analogy between the powers of a corporation, under its charter, and the powers of Congress under the Federal Constitution.    All incidental powers, necessary to carry out or exercise the powers expressly given, are implied.    And the word "necessary" "means no more than *needful, requisite, incidental, useful, or conducive to.*"    (Story on Const. sec. 1248.)    It does not mean *absolutely* necessary, nor does it imply the use of only the most direct and simple means calculated to produce the end (*Commonwealth* v. *Lewis,* 6 Binn. 270–1; *McCulloch* v. *Maryland,* 4 Wheat. 413; *Metropolitan Bank* v. *Van Dyck,* 27 N. Y. 438); but the use of any means which are appropriate and proper. The question of *ultra vires* can arise only as to the principal act, which, in this case, is taking a lease.    It cannot arise in relation to the covenants contained in the lease.

By the Court :

The covenants on the part of the lessee, the Central Pacific Railroad Company, contained in the lease made by the California Pacific Railroad Company, the lessor, as set forth in the fifth paragraph of the agreed case, are that the lessee will pay to the lessor a specified sum of money semi-annually, keep the road in repair, pay taxes, legal expenses, etc., and guarantee the payment, both principal and interest, of the bonds of the lessor, mentioned in the lease.    The lease of the road, the covenants on the part of the lessor mentioned in the lease, and the implied covenant to pay to the lessee the moneys which the lessee may pay upon the bonds, over and above the portion of the semi-annual payments which may be applied thereto, constitute the consideration for the covenants on the part of the lessee ; and, in our opinion, they constitute a sufficient, valid, and legal consideration therefor.

There can be no question that the lessee had competent power to bind itself, in consideration of the lease, to pay an amount

equal to the amount of the bonds directly to the lessor, or to third persons, at the request of the lessor. It will be noticed that the aggregate of the semi-annual payments mentioned in the lease greatly exceeds the amount, both principal and interest, of the bonds.

Such an agreement would not be any the less obligatory, or in any respect beyond the power of the lessee, by reason of the fact that the third persons to whom the payment is to be made are the holders of the bonds of the lessor.

The question, therefore, is whether the lessee, being a railroad corporation organized under the laws of this State, has power, upon a sufficient consideration, to guarantee the payment of the bonds of the lessor mentioned in the agreed case. The power on the part of the lessor to make, and on the part of the lessee to accept, the lease of the railroad is not denied; and we have seen that, in consideration of the lease, the lessee might have covenanted to pay the rent to third persons, upon the bonds of the lessor. But it is urged that a railroad corporation does not possess the power to enter into a contract of guaranty, because such power is not granted by the statute providing for the formation of those corporations. The third section of the act under which the lessee was incorporated provides that the corporation " shall be capable in law to make all contracts  *  *  *  necessary for the construction, completion, and maintenance of such railroad,  *  *  *  and generally to possess all the powers and privileges, for the purpose of carrying on the business of the corporation, that private individuals and natural persons now enjoy." (Stats. 1861, p. 608.) A provision substantially to the same effect is contained in the Civil Code, sec. 354, but it is unnecessary to determine whether it is applicable to the corporations in this case, they having been organized before the adoption of the Code. Had a natural person taken this lease and made the contract of guaranty now before us, there is no room to doubt that it would be held valid; and this being so, the exercise of the power by the corporation must be upheld, unless, by its very nature, it is a power which a corporation cannot exercise. There is no sufficient reason deducible from the character of such a corporation, and the business in which it engages, why

the corporation may not, for a valid consideration, guarantee the payment of a debt, which it may directly contract to pay—why the corporation may not, upon a sufficient consideration, make a conditional as well as an absolute promise of payment. These views are sustained by *Railroad Company* v. *Howard*, 7 Wall. 411. In that case, the contracts of guaranty made by the corporation for the payment of bonds issued to it by certain municipal corporations, in payment of their subscriptions to the stock of the company, were upheld as a valid exercise of power by the corporation. In that case, as in this, the statute conferred upon such corporations power to make contracts to the same extent as that enjoyed by individuals. (See, also, *Smead* v. *Indianapolis &c. Railroad Company*, 11 Ind. 104; *Stewart* v. *Erie &c. Transportation Company*, 17 Min. 372.) The statute having conferred upon such corporations all the powers and privileges for the purpose of carrying on their business that natural persons enjoy, and the Civil Code (sec. 286) having provided that " private corporations may be formed for *any purpose* for which individuals may lawfully associate themselves," the question of the policy of the exercise of such enlarged powers by corporations is beyond the reach of the Courts.

Judgment affirmed.

McKINSTRY, J., dissenting:

I dissent. The California Pacific Railroad Company issued certain bonds, on each of which, and over the signature and seal of the Central Pacific Railroad Company, was written the following:

" Whereas, the California Pacific Railroad Company, maker of the foregoing bond, has leased its railroad, and the branches thereof, to the Central Pacific Railroad Company; now therefore, in consideration of said lease, *and of other valuable considerations thereunto moving*, the said Central Pacific Railroad Company hereby guarantees the payment of the foregoing bond, both principal and the interest, to the holder thereof, according to the terms of said bond and the coupons thereto attached."

It is admitted that a corporation can exercise no powers ex-

cept such as are conferred on it by its charter. The statement of this proposition has sometimes been made more elaborate (without changing it in substance or effect)—by adding, "and such incidental powers as are necessary to carry out the powers expressly conferred."

The clause of the third section of the Act of 1861, which declares that the corporation shall be held "generally to possess all the powers and privileges, *for the purpose of carrying on the business of the corporation,* that private individuals and natural persons now enjoy," gives no additional primary powers to the corporation.

That clause follows after an enumeration of certain powers specifically conferred, and is but declaratory of the rule that powers incidental to the expressed powers conferred may be employed by a corporation. It is a legislative enunciation of the rule always recognized by the Courts that the implied or incidental powers which may be exercised by a corporation shall be ascertained by reference to the case of an individual upon whom should be conferred limited powers like those expressly granted to the corporation by its charter. If the clause quoted means more than this, what does it mean less than a grant to the corporation of every power which may be employed by an individual carrying on a private business for his personal emolument? No Court has heretofore decided, nor has counsel contended, that the last was the proper construction.

The language of a section of the statute under which the defendants were operating is: "Any railroad corporation organized under the act to which this is amendatory, shall have the right to lease the whole or any portion of their railroad to any other corporation organized under this act."

There is no pretense that the power which the defendant, the Central Pacific, attempted to employ was expressly granted by its charter, or that it can be derived from any portion of the statute under which it was created, except the section last recited.

The only question presented, therefore, is whether by virtue of a power to rent a railroad a railroad company has the right *to guarantee the bonds of another corporation?*

It has been urged that a corporation may employ any appro-

priate and proper means to the exercise of a power expressly conferred. It may be admitted that it is not confined to the means which the Courts may deem *most* appropriate, or is not confined to one of several modes, all reasonably adapted to the object in view; but, whatever the means employed, they must be such as directly lead to the end, which is the exercise of a power expressly conferred. Neither in law nor morals can a *sham* be substituted for a reality. Under the pretense of exercising a principal power actually conferred, the directors of a corporation cannot exercise another and distinct principal power not conferred, and therefore prohibited.

By the laws of Iowa a railroad corporation was authorized to issue its own bonds to raise money for the construction of its railroad, and was also authorized to receive the bonds of cities and counties donated to it to aid in the construction of the same railroad. In *The Railroad Company* v. *Howard*, (cited in the prevailing opinion herein) it was held that the railroad company might guarantee the bonds of a city so donated. It would seem that a bare statement of the facts would show the broad difference between that case and the present. *Smead* v. *The Indianapolis, etc., R. Co.* 11 Ind., (also cited in the prevailing opinion) was a case in which the Supreme Court of Indiana held (under a charter which authorized the defendant to connect with any other road in an adjoining State, and "to make such contracts and agreements with any such road constructed in an adjoining State for the transportation of freight and passengers, or for the use of its road, as to the Board of Directors may seem proper,") that the company could agree to pay the foreign company for widening its track, and other proper considerations. Whether decided properly or not, I cannot admit that case to be analogous to the one before us. In *Stewart* v. *Erie and Western Transportation Company*, 14 Minn., (also cited in the prevailing opinion) it was simply held that it was competent for a railroad company, if not restrained by its charter, to enter into contracts with connecting carriers for the purpose of providing for through transportation over its road and the routes of such carriers.

Nor, in my view, is it correct to say, as insisted by counsel,

that there is a perfect analogy between the nature of the implied powers which may be exercised by a private corporation and that of the powers which may be exercised by the Congress of the United States under the provision of the Constitution—" To make all laws which are necessary and proper for carrying into execution the several powers vested in them by the Constitution." (Art. 1, sec. 8.) Assuming (for the sake of the argument) what it is not necessary to admit in the present case, to wit: that *McCollock* v. *The State of Maryland,* 4 Wheat. (the United States Bank case) was correctly decided, the decision of the Court there turned in an eminent degree on the point that a wide discretion was vested in the legislative department of the Government to determine what was necessary, appropriate, and proper *legislation* to carry out the powers conferred on the Congress.

Ordinary corporations, under our laws, are subject to the same rules of construction as are individual citizens. The directors have no right to exercise any power as conferred by implication, or by the section declaratory of what would have been implied, except such as is incidental to and leads up to the principal power ; such as, in accordance with the law applicable to individuals clothed with special authority, can be declared to be included within the principal power granted. Neither a corporation nor an individual can exceed the power granted, by assuming a right to construe the power for itself or himself. It is always a question of law for the Courts (the facts being found) whether a special, limited power conferred on a person, natural or artificial, has been exceeded; the discretion to be indulged by the person as to the means to be employed in exercising the power must be confined to the selection of such as—in accordance with established legal principles, and in view of the ends for which the express power was granted—are included within the express power.

I dissent from the statement that, under our system, the directors of a corporation *are* the corporation. The artificial person can, of course, act only through agents; but it is a mistake to say that these agents of the corporation are in no sense the agents of nor responsible to the *stockholders.* If the directors go

beyond their authority, the stockholders who are injured may complain. The directors are *trustees*, clothed with limited powers, to be exercised for the benefit of the stockholders ; to say, in this connection, that they constitute the corporation itself, means, if it means anything, that they are not responsible to anybody for an abuse of their trust. They act for and on behalf of the stockholders, and the relation between them—at least in equity—is that of agent and principal.

If this were a question between two ordinary persons I suppose there would be little diffiulty in deciding it. If an agent, simply authorized to rent property for the use of an individual; should undertake to indorse, in the name of his principal, the promissory notes of the landlord, would any Court in the land hesitate to declare that he had exceeded his power ? If, after providing in the lease for a quarterly or annual rent, he had inserted a clause that the contingent liability for a large amount of the landlord's paper, sought by him to be guaranteed in the same instrument, should constitute a part of the consideration for the use of the premises leased, would this be any the less an attempt on the part of· the agent to do that which he had no power to do ? In such a case the power would be construed with reference to the object for which it was given, and to the legal effect of the language employed.

The powers referred to in the clause of the statute (which are the same as those which would be implied in the absence of that clause) are such as are incidental to the principal powers conferred. A principal power cannot be exercised because another principal power has been conferred; otherwise there are no bounds to the powers which may be exercised by a corporation, and the whole doctrine of limited agency would be at an end. The corporation is as absolutely prohibited from exercising the powers not granted, when this is sought to be accomplished under the pretense of exercising a power which has been granted, as when it is attempted boldly without such pretense.

If, after having provided in a lease for the payment of an annual rent, the trustees may impose a contingent liability of vast amount upon their beneficiaries by guaranteeing the bonds of the lessor, payable in twenty years—" both principal and in-

terest"—they may in like manner, and as part of the consideration, stipulate to establish a bank, and extend a line of discount to the lessor, or *its* directors; or may agree to build steamships to run from San Francisco to the Chinese ports, with peculiar privileges in the way of freight or passage to the officers or members of the other corporation.

I do not understand that the Courts, in dealing with this class of questions, are to ignore the common understanding of ordinary terms, or to give an interpretation to the language of a statute—in itself simple and direct—which neither accords with its natural meaning, nor with the legal principles applicable to transactions of the same character between individuals.

Mr. Justice Crockett expressed no opinion.